UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| TODD B. RAUFEISEN, ) | |
| ) | |
| Petitioner-Defendant, ) | |
| ) | |
| v. ) | Case No. 17-cr-40049 |
| ) | 20-cv-4171 |
| ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent-Plaintiff. ) | |

### ORDER AND OPINION

**SARA DARROW, Chief U.S. District Judge:**

Now before the Court is Petitioner Todd B. Raufeisen's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (d/e 51).  For the reasons below, the Court DENIES Raufeisen's § 2255 motion (d/e 51), and DECLINES to issue a certificate of appealability.

### I. BACKGROUND

Beginning in 2010 and continuing for roughly six years, Raufeisen ran a Ponzi scheme that defrauded 22 investors—many of whom were his own family and friends—out of over $1.7 million dollars.  By 2016, some of his investors and the federal government had caught on to his scheme.  On May 25, 2017, Raufeisen pled guilty pursuant to a written plea agreement to a two-count information that charged: (1) wire fraud, in violation 18 U.S.C. § 1343; and (2) money laundering in criminally derived property, in violation of 18 U.S.C. § 1957.  *See* Information (d/e 1); Plea Agreement (d/e 4).

The United States Probation Office prepared a presentence investigation report (PSR) prior to sentencing. *See* PSR (d/e 11). The PSR calculated a base offense level of 25 based on a loss amount of $1,723,606.26. PSR ¶68. A one-level increase applied pursuant to U.S.S.G. § 2S1.1(b)(2)(A) due to Raufeisen's 18 U.S.C. § 1957 conviction. PSR ¶69. An additional two-level enhancement for abuse of a position of trust was also applied pursuant to U.S.S.G. § 3B1.3. PSR ¶71. After a three-point reduction for acceptance of responsibility, Raufeisen's total offense level was 25. Along with a criminal history category of I, Raufeisen's advisory guideline imprisonment range was 57 to 71 months. PSR ¶112.

On September 14, 2017, the Court held Raufeisen's sentencing hearing. Raufeisen's counsel had submitted a sentencing memorandum and supporting letters in advance of sentencing. *See* Sentencing Memo. (d/e 13). The memorandum highlighted that while the offense was serious, it was nonviolent. It also highlighted Raufeisen's commitment to his family and his community, particularly citing his involvement with the John Deere Golf Tournament, a charity event. The attached letters also repeatedly highlighted his community involvement, noting his involvement with the Quad City Chamber of Commerce for over ten years, his membership on the boards of Big Brother Big Sisters and Community Health Care, as well as his involvement with the Seton Catholic School Parents and coaching youth sports for both of his children. *See, e.g.,* Scott Christiansen Letter (d/e 13-1 at 2); Jeff Condit Letter (d/e 13-1 at 5); Ted Johnson Affidavit (d/e 13-1 at 11); Clair Peterson Letter (d/e 13-1 at 13). These affidavits noted Raufeisen's commitment and devotion to helping the community. The sentencing memorandum and the letters also expressed some of the victims continued belief that Raufeisen would be able to repay his victims and their continued belief in him as a businessman. *See* Memo. at 6.

At the sentencing hearing, Raufeisen withdrew his previous objection to the two-level increase for abuse of a position of trust. *See* S.Tr. (d/e 31). Six victims choose to speak at the sentencing hearing: Peter Mangieri, Duncan Cameron, John Hudgins, Jem Hudgins (via letter), David Werning, and Sara Thoms (on behalf of her husband Michael Thoms). David Werning, while a victim, spoke in support of Raufeisen and in his belief that while Raufeisen had made a mistake, that he was a good person and would work to repay everyone. The rest of the victims spoke of the impact the fraud had on them and their families.

The government then made its commentary on the sentencing factors. S.Tr. (d/e 31) at 34-48. The government emphasized the need for justice, the length of the fraud, and the many lies Raufeisen told to continue tricking investors and delay repayments. Importantly, Raufeisen had made no efforts to begin paying victims back the money he owed. Instead, as he did during the fraudulent scheme, Raufeisen continued to prioritize funding what the government characterized as his family's high-end life-style. *Id.* at 36-39, 44-45. The government also highlighted that, while Raufeisen was certainly active in his community, it appeared much of his community service also served his business interests and raised his profile in his community. *Id*. at 40.

Defense counsel made his oral sentencing commentary, arguing for a sentence of home confinement or a below-guidelines imprisonment sentence. Defense counsel also refuted any allegations that the defense was trying to minimize the conduct and not take responsibility, and refuted the notion that Raufeisen was a sociopath. Defense counsel highlighted that Raufeisen was a public figure and that this conviction already would stigmatize him from working in his previous field of real estate development. S.Tr. (d/e 31) at 51-52. Defense counsel highlighted how Raufeisen ultimately accepted responsibility and worked with law enforcement agents and

told the truth about his conduct. *Id.* at 52-53. Next, Raufeisen made his statement in allocution, expressing his remorse to his victims and his family. *Id.* at 53-54.

Finally, the Court proceeded to determine Raufeisen's sentence and went through the § 3553(a) factors. S.Tr. (d/e 31) at 55-68. Focusing on the seriousness of the offense, the Court noted the many deliberate and methodical lies that Raufeisen told to commit his offense, and that he committed his offense by "capitaliz[ing] on the trust of people who weren't strangers . . . and . . . on the status that [he] had built in the community." S.Tr. at 57. The Court remarked on how someone could wind up at the same guideline offense level with only a one-time deal, as opposed to Raufeisen's "sustained effort and deliberate effort over six years to keep this lie alive" and involving more than double the required ten victims to be at his guideline level. *Id.* at 57-58. The Court found that his lack of attempts to make any even symbolic payments to his victims, while not an aggravating factor, made his statement about a desire to pay his victims back ring "a little hollow." *Id.* at 59. The Court noted that Raufeisen had the opportunity to declare bankruptcy and sell his large house instead of turning to fraud. Importantly for this motion, regarding his community service the Court noted that:

> Your involvement in your children's lives and your community involvement has been presented in your defense as a mitigating factor, and community involvement, of course, is to be lauded, and any charitable efforts that you have made are, at first glance, good, but I do agree in large part with the government's characterization of much of this community involvement is also being part of doing business. It was a collateral benefit of rubbing shoulders with the very people that you needed to do business with and ultimately defrauded. And while you might have also had -- and I have no reason to doubt -- a dual desire to and motivation to help people, it certainly had that collateral benefit, and it's very difficult for me to truly rely upon that as a mitigating factor. Maybe -- and I'm not saying you were obliged to do this, but what might abate that concern is if there were examples of less public forms of community service, but I don't have that before me.

*Id.* at 63.  The Court proceeded to sentence Raufeisen to a slightly above-guideline sentence of 72 months of imprisonment, followed by a three year term of supervised release.  S.Tr. at 70.

Raufeisen filed an appeal, but his appointed counsel moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967).  The Seventh Circuit granted the motion and dismissed Raufeisen's appeal on January 18, 2019.  *See United States v. Raufeisen*, 748 F. App'x 704 (7th Cir. 2019).

On April 20, 2020, Raufeisen filed this counseled Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (d/e 51).  He argues that he received ineffective assistance of counsel at sentencing when counsel failed to investigate and present witnesses who could have testified about Raufeisen's community service.  The government has filed a response in opposition (d/e 61), and Rausfeisen has filed a reply (d/e 64).  This order now follows.

## II. LEGAL STANDARD

Section 2255, "the federal prisoner's substitute for habeas corpus," *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012), permits a prisoner incarcerated pursuant to an Act of Congress to request that his sentence be vacated, set aside, or corrected if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief under § 2255 is appropriate for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quotation marks omitted).

## III. DISCUSSION

**A. The Motion is Timely.**

The government first argues that Raufeisen's motion was untimely. A one-year period of limitation applies to § 2255 petitions. 28 U.S.C. § 2255(f). The one-year period begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4).

Here, Raufeisen's appeal was decided on January 18, 2019. *See United States v. Raufeisen*, 748 F. App'x 704 (7th Cir. 2019). Raufeisen's judgment became final 90 days later, on April 18, 2019, when the time for filing a petition for a writ of certiorari expired. *See Clay v. United States*, 537 U.S. 522, 527 (2003) (finality attaches when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires"). Raufeisen's § 2255 motion was, therefore, due one year later on April 18, 2020. However, as Raufeisen points out, April 18, 2020 fell on a Saturday. Pursuant to Fed. R. Civ. P. 6(a)(1)(C), Raufeisen's § 2255 Motion deadline continued until the next business day, April 20, 2020. *See also* Rule 12 of the Rules Governing Section 2255 Case in the United States District Courts (allowing Federal Rules of Civil Procedure to be

used when not inconsistent with the statute or the § 2255 rules); *United States v. Marcello*, 212 F.3d 1005, 1009 (7th Cir. 2000) (relying on Fed. R. Civ. P. 6(a)'s "anniversary rule" to determine § 2255 deadline).  The Court finds that Raufeisen's motion was, therefore, timely filed on April 20, 2020.

## B. Raufeisen Has Not Shown That He Received Ineffective Assistance of Counsel.

Raufeisen's § 2255 claim is based on one remark that the Court made at the sentencing hearing regarding the lack of evidence of "non-public" acts of community service by Raufeisen that the Court thought "maybe" would have helped it view Raufeisen's community service as more of a mitigating factor.  Raufeisen argues that counsel should have anticipated this criticism and, had he done so and conducted a more thorough investigation, counsel would have been able to present more specific examples of Raufeisen's community service at sentencing.  And, Raufeisen argues that the failure to investigate and present this evidence "directly led to a higher sentence." Mot. (d/e 51) at 2.

Raufeisen's claim arises under the Sixth Amendment.  The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984).  Under *Strickland's* two-part test, a petitioner must show both that his attorney's performance was deficient and that he was prejudiced as a result.  *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015).  Courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 690.  A petitioner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail.  *United States v. Delgado,* 936 F.2d

303, 311 (7th Cir. 1991).

Here, the Court turns first to the prejudice prong. In order to establish that counsel's failure to investigate mitigating evidence was prejudicial, the petitioner must present new evidence that "alter[s] the sentencing profile presented to the sentencing judge." *Strickland*, 466 U.S. at 700. Moreover, under *Strickland,* Raufeisen needs to present "more than a showing that the evidence would have been beneficial; the mere possibility of a positive effect on the trial court's sentencing decision is too speculative a basis for relief." *Andrashko v. Borgen*, 88 F. Appx. 925, 929 (7th Cir. 2004) (*citing Ducato v. United States,* 315 F.3d 729, 730-31 (7th Cir. 2002) (failure of attorney to present mitigation witnesses at sentencing "too uncertain" to justify reversal); *United States v. Ruzzano,* 247 F.3d 688, 697 (7th Cir. 2001) (mere possibility of different sentence "falls short of the required showing of a reasonable probability that the sentence would have been different"). To show prejudice "the new evidence 'must differ in a substantial way—in strength and subject matter—from the evidence actually presented at sentencing.'" *Johnson v. United States*, No. 11-CV-580-NJR, 2016 WL 1394232, at *6 (S.D. Ill. Apr. 8, 2016), *aff'd,* 708 F. App'x 883 (7th Cir. 2018) (*citing Hill v. Mitchell*, 400 F.3d 308, 319 (6th Cir. 2005)). *See also Blanton v. Quarterman*, 543 F.3d 230, 239, n.1 (5th Cir. 2008) (explaining that, in recent Supreme Court cases finding prejudice from trial counsel's failure to investigate, the mitigation evidence that the attorneys failed to uncover was "shocking and starkly different than that presented at trial.").

Here, the Court does not find that additional evidence Raufeisen has presented would have altered the sentencing profile in any meaningful way. Raufeisen presents three affidavits from individuals he claims show he engaged in "non-public" acts community service:

- David Werning submitted an affidavit speaking to Raufeisen's work on the

- John Deere Classic Golf Tournament.  *See* Affidavit of David Werning (d/e 51-3).  He specifically mentioned that Raufeisen "always offered to do whatever was needed, even when it was unpleasant or uncomfortable.  When rain had interrupted the golf tournament, for instance, Todd volunteered to bring mulch across the course and spread it himself in the rain."  *Id.*  Mr. Werning also emphasized that he believed Raufeisen was not motivated by the prestige of the position and that Raufeisen "relished in the non-public aspects of the job."  *Id.*

- Ted Johnson submitted an affidavit speaking to Raufeisen's work on the Quad Cities Chamber of Commerce.  *See* Affidavit of Ted Johnson (d/e 51-4).  He stated that to him, "the public aspects of the job were never the reason that [Raufeisen] chose to pursue it in the first place.  It always seemed as though he found great satisfaction in serving his community, even if it involved doing work that others might have avoided or delegated."  *Id.*  Mr. Johnson also mentioned that Raufeisen did clerical work, moved furniture, and lifted heavy boxes for the Chamber of Commerce.  *Id.*  He also stated his understanding that Raufeisen did not ask any of his colleagues on the Chamber of Commerce to invest with him.  *Id.*

- Steven Nieslawski was a friend of Raufeisen from college.  *See* Affidavit of Steven E. Nieslawski (d/e 51-5).  Mr. Nieslawski testified about Raufeisen's "dedicat[ion] to helping those around him" throughout his life.  *Id.*  He mentioned Raufeisen's role as a leader and an organizer in his

fraternity and that he had many friends on campus. *Id.*

The Court finds that these affidavits are not sufficient to "alter the sentencing profile," meaning that Raufeisen cannot show prejudice. Notably, as mentioned above, the Court had similar evidence before it at the time of sentencing that Raufeisen volunteered with both the Chamber of Commerce and at the John Deere Golf Tournament, as well as other affidavits from friends and family highlighting his years of community involvement. *See*, *e.g.,* Scott Christiansen Letter (d/e 13-1 at 2); Jeff Condit Letter (d/e 13-1 at 5); Ted Johnson Affidavit (d/e 13-1 at 11); Clair Peterson Letter (d/e 13-1 at 13). These affidavits noted also Raufeisen's commitment and devotion to helping the community. The affidavits Raufeisen now submits provide additional details about Raufeisen's community service, but the evidence that, as part of that same community service, he performed some less-than-glamorous tasks does not meaningfully deviate from the evidence presented at sentencing.

Raufeisen has narrowed his focus and taken out of context a slightly vague statement about "non-public" community service the Court made while explaining Raufeisen's sentence. But, the Court also stated at sentencing that it had "no reason to doubt- a dual desire to and motivation to help people, it certainly had that collateral benefit." S.Tr. (d/e 31) at 63. Clearly, the individuals who wrote these affidavits have great faith in him and want to believe his motivations were purely charitable. However, given Raufeisen's line of work and his chosen organizations to volunteer with, the affidavits do not contradict the Court's finding that this volunteer work *also* served his business interests. Again, the Court never doubted that Raufeisen also was motivated by the desire to help people.

Moreover, the Court's sentence was not driven by Raufeisen's community service (or any perceived ill motives in his community service). Rather, the Court found that Raufeisen's

offense was particularly serious and worse than others that could end up at the same guideline level. S.Tr. (d/e 31) at 55-68. The Court also noted his lack of attempts to make any even symbolic payments to his victims, while not an aggravating factor, made his statement about a desire to pay his victims back ring "a little hollow." *Id.* at 59. The evidence Raufeisen claims should have been presented would merely have provided additional details on one small factor that the Court considered when arriving at his sentence. Accordingly, the Court finds that Raufeisen has not shown prejudice.

Moreover, the Court does not find that Raufeisen's counsel's conduct was deficient. The Court disagrees with Raufeisen's apparent view that defense counsel needs to conduct an extensive investigation into any potentially mitigating topic. "With the benefit of hindsight, a defendant can often point to some additional subject and argue it should have been pursued further. The Sixth Amendment does not require counsel to investigate every conceivable line of mitigation evidence—it requires counsel to make reasonable decisions about which matters to pursue." *Laux v. Zatecky*, 890 F.3d 666, 675 (7th Cir. 2018) (citing *Wiggins*, 539 U.S. at 533, 123 S.Ct. 2527). Counsel is entitled to use his experience to determine the *type* of mitigating evidence that would most likely lead to a lower sentence and focus his efforts accordingly. Here, counsel determined that the best mitigation strategy would be making efforts to make restitution payments in advance of sentencing. Raufeisen does not deny that agreed to this strategy and he repeatedly said he would make efforts to make payments, but inexplicably did not. That deficiency can only be attributed to Raufeisen; not his counsel.

Counsel also knew and advised that evidence of Raufeisen's community service would also benefit his defense and *did* present evidence regarding Raufeisen's community service. Raufeisen, argues that counsel was still deficient because he failed to predict that the Court

would see his community service as having the additional benefit of serving Raufeisen's own business interest, and, therefore, counsel failed to sufficiently delve into Raufeisen's community service background and find some examples that might refute that characterization. But the Court does not find that counsel was required to painstakingly exhaust every possible line of mitigating evidence. Accordingly, the Court does not find that counsel was unreasonable for not conducting a more thorough investigation in the details of Raufeisen's community service.

## IV. EVIDENTIARY HEARING

An evidentiary hearing is not always necessary in § 2255 cases. *See Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). However, "[a] hearing is required unless the record conclusively shows that the movant is not entitled to relief." *Hicks v. United States*, 886 F.3d 648, 650 (7th Cir. 2018); 8 U.S.C. § 2255(b). Here, no hearing is necessary because Petitioner has not sufficiently alleged material facts that, if true, would entitle him to relief on his ineffective assistance of counsel claims.

## V. CERTIFICATE OF APPEALABILITY

If Petitioner seeks to appeal this decision, he must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c) (providing that an appeal may not be taken to the court of appeals from the final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability). A certificate of appealability may issue only if Petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim *and* about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, the Court does not

find that reasonable jurists could disagree that Petitioner's claims are meritless. Accordingly, the Court declines to issue a certificate of appealability.

## VI.  CONCLUSION

For the reasons stated, the Court DENIES Petitioner's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 (d/e 51). The Court DECLINES to issue a certificate of appealability. The Clerk is DIRECTED and enter the Judgment in favor of Respondent and close the accompanying civil case, 20-4171. This case is CLOSED.

Signed on this 27th day of January 2023.

/s/ Sara Darrow
Sara Darrow
Chief United States District Judge